**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| M.M., AN INDIVIDUAL,<br><br>Plaintiff,<br><br>v.<br><br>RED ROOF INNS, INC.; RRF HOLDING COMPANY, LLC; RED ROOF FRANCHISING, LLC; RRI WEST MANAGEMENT, LLC; RRI TOLEDO HOSPITALITY, LLC d/b/a RED ROOF INN TOLEDO,<br><br>Defendants. | CIVIL ACTION NO.: 2:26-cv-741<br><br>COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff M.M. ("M.M."), by and through the undersigned counsel, files this Complaint against Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC; RRI West Management, LLC; and RRI Toledo Hospitality, LLC d/b/a Red Roof Inn Toledo as Defendants, and would respectfully show the Court as follows:

## SUMMARY

1. M.M. brings this civil action under 18 U.S.C. § 1595(a) as a victim of sex trafficking in violation of 18 U.S.C. § 1591, seeking compensation for the severe harm she suffered while she was trafficked at the Red Roof Inn Toledo hotel property located at 3530 Executive Pkwy, Toledo, OH 43606, owned and/or operated by Defendant RRI Toledo Hospitality, LLC d/b/a Red Roof Inn Toledo ("Franchisee Defendant") (the "Subject Red Roof Inn"). The Subject Red Roof Inn was branded, franchised and/or supported, and controlled through brand standards, policies, and systems established and/or administered by Defendants Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC; and RRI West Management, LLC (collectively, the "RRI Brand Defendants").

2. M.M. alleges that Defendants derived financial benefit from facilitating sex trafficking by providing a venue—and the cover of a legitimate business—where traffickers and sex buyers could exploit victims, including M.M. Sex trafficking ventures cannot operate without access to physical spaces; providing traffickers with a hotel room is providing them with an essential place of business. Defendants enabled traffickers despite obvious and apparent indicators of sex trafficking occurring at the hotel property.

3. Defendants had the knowledge and opportunity to prevent the severe and permanent harm M.M. experienced. Instead, Defendants continued to profit from and facilitate the trafficking venture by renting rooms and providing hotel services under circumstances in which they knew or should have known that sex trafficking was occurring at the property. Accordingly, M.M. brings this action for damages and attorneys' fees as authorized by federal law.

## PARTIES

4. M.M. is a resident of Ohio and was born in 2000. She may be contacted through her lead counsel, whose information is contained below.

5. M.M. is a victim of sex trafficking under 18 U.S.C. § 1591(a). M.M. was harbored, transported, or provided for the purpose of being caused, through force, fraud, or coercion, to commit a commercial sex act.

6. The trafficking of M.M. occurred in or affected interstate commerce.

7. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address are not contained in this Complaint to protect the safety, privacy, and identity of this sex trafficking victim. Nationwide, similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

8. Defendant Red Roof Inns, Inc. is a Delaware corporation with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio 43221.

9. Defendant RRF Holding Company, LLC is a Delaware limited liability company with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio 43221.

10. Defendant Red Roof Franchising, LLC is a Delaware limited liability company with its principal place of business in Ohio. It can be served through its registered agent: Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215. Its corporate headquarters is located at 7185 Walton Pkwy, New Albany, Ohio 43054.

11. Defendant RRI West Management, LLC is a Delaware limited liability company with its principal place of business in Ohio. It can be served through its registered agent: Capitol Corporate Services, Inc., 4568 Mayfield Road, Suite 204, Cleveland, Ohio 44121.

12. Defendants Red Roof Inns, Inc., RRF Holding Company, LLC, Red Roof Franchising, LLC, and RRI West Management, LLC are referred to collectively as the "RRI Brand Defendants." At all relevant times, the RRI Brand Defendants owned, controlled, franchised, branded, and/or managed the Red Roof Inn brand and franchise system and/or otherwise established and enforced brand standards, policies, training, and centralized systems applicable to Red Roof Inn-branded properties, including the Subject Red Roof Inn.

13. Defendant RRI Toledo Hospitality, LLC d/b/a Red Roof Inn Toledo is a Michigan limited liability company (Michigan Entity ID No. 802723942) registered to do business in Ohio as a foreign limited liability company since January 11, 2022 (Ohio Secretary of State File No. 4799763), with its principal place of business at 3530 Executive Pkwy, Toledo, OH 43606. It can be served through its Ohio statutory agent, Wendy Houke, at 207 North Main Street, Rawson, OH 45881. Upon information and belief, RRI Toledo Hospitality, LLC owned and/or operated the Subject Red Roof Inn throughout the period of M.M.'s trafficking. At all relevant times, Franchisee Defendant owned, operated, controlled, and managed the Subject Red Roof Inn and employed the staff at that hotel.

14. The RRI Brand Defendants and Franchisee Defendant will be referred to collectively as "Defendants."

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, each Defendant resides in this District, including because each Defendant is subject to this Court's

personal jurisdiction with respect to this action. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to Plaintiff's claims—including Defendants' franchising, branding, policymaking, training, oversight, and revenue-related conduct connected to the Subject Red Roof Inn—occurred in this District.

17. Each of the RRI Brand Defendants participated in a joint venture operating the Subject Red Roof Inn from a central location at the RRI corporate offices in New Albany, Ohio, within this District. On information and belief:

a. The relationship between the RRI Brand Defendants was centered at the RRI corporate offices in the Southern District of Ohio;

b. The RRI Brand Defendants signed agreements with one another related to the Subject Red Roof Inn from RRI corporate offices in the Southern District of Ohio;

c. The RRI Brand Defendants exercised joint control over operations of the Subject Red Roof Inn from a central location at RRI corporate offices in the Southern District of Ohio;

d. The RRI Brand Defendants distributed revenue earned from the Subject Red Roof Inn among themselves from RRI corporate offices in the Southern District of Ohio;

e. The RRI Brand Defendants developed policies for the Subject Red Roof Inn from RRI corporate offices in the Southern District of Ohio; and

f. The RRI Brand Defendants communicated with one another regarding operation of the Subject Red Roof Inn from RRI corporate offices in the Southern District of Ohio.

18. Plaintiff's claims against the Franchisee Defendant arise out of its contacts with Ohio through its franchising and/or operational relationship with the RRI Brand Defendants, which have their principal place of business in the Southern District of Ohio. Upon information and belief:

a. The Franchisee Defendant actively sought out a franchising and/or operational relationship by contacting the RRI Brand Defendants in Ohio;

b. The Franchisee Defendant acknowledged that the execution and acceptance of the franchising and/or operating agreement occurred in the Southern District of Ohio;

c. The franchising and/or operating agreement had a choice of law provision selecting the law of Ohio as the governing law;

d. The franchising and/or operating agreement required the Franchisee Defendant to irrevocably submit to the jurisdiction of Ohio courts and waived all objections to personal jurisdiction and service of process;

e. The agreement required the Franchisee Defendant to report information to the RRI Brand Defendants in Ohio, including information about all incidents involving safety, security, public relations, or serious injury to persons or property, including those involving sex trafficking victims;

f. The Franchisee Defendant agreed to submit all notices required under the agreement to the RRI Brand Defendants in the Southern District of Ohio;

g. The Franchisee Defendant was required to attend training and meetings in Ohio;

h. The RRI Brand Defendants dictated policies related to safety, security, human trafficking, employee training and response from their principal place of business in the Southern District of Ohio;

i. Reservation information for rooms at the Subject Red Roof Inn passed through a system operated and managed by the RRI Brand Defendants from their principal place of business in Ohio;

j. Payment information for rooms at the Subject Red Roof Inn passed through a system operated and managed by the RRI Brand Defendants in Ohio;

k. The benefit that the Franchisee Defendant received from room rentals was governed by the Ohio franchising and/or operating agreement; and

l. The Franchisee Defendant agreed to make all payments due under the agreement at the RRI Brand Defendants' principal place of business in the Southern District of Ohio.

19. Upon information and belief, the Franchisee Defendant contractually consented to jurisdiction in the Southern District of Ohio.

## STATEMENT OF FACTS

### I. M.M. Was a Victim of Sex Trafficking at the Hotel Owned, Operated, Managed and Controlled by Defendants

20. From approximately July 2023 through February 2024—a period of approximately eight months—M.M. was sex trafficked at the Red Roof Inn Toledo located at 3530 Executive Pkwy, Toledo, OH 43606 (the "Subject Red Roof Inn").

21. M.M. was trafficked by a male trafficker named Darrel ("the Trafficker"). The Trafficker used force, fraud, and coercion to compel M.M. to engage in commercial sex acts with sex buyers at the Subject Red Roof Inn. The Trafficker supplied M.M. with crack cocaine and exploited her dependency on the drug to manipulate and control her. The Trafficker threatened M.M., warning her that members of his family would physically beat her if she did not comply or attempted to leave. The Trafficker repeatedly grabbed M.M. by the hair, screamed degrading insults at her, and physically beat her, leaving visible bruising across her legs.

22. The Trafficker rented rooms at the Subject Red Roof Inn in repeated successive stays over the approximately eight-month period, booking rooms in his own name and, at times, booking rooms in Plaintiff's own name, and paying in cash. The Trafficker advertised M.M. online for commercial sex acts to be performed at the property, including through the websites and platforms Skipthegames, Grindr, and MeetMe, upon information and belief using the hotel's free Wi-Fi.

23. In addition to trafficking M.M., the Trafficker dealt crack cocaine out of the rooms he rented at the Subject Red Roof Inn, leaving cocaine baggies and other drug paraphernalia in plain view in the rooms. In or about January 2024, the Trafficker was taken into custody and incarcerated. Following the Trafficker's incarceration, the Trafficker's nephew, known as "AB," took over the trafficking venture and continued to traffic M.M. at the Subject Red Roof Inn for approximately one additional month. M.M.'s trafficking at the Subject Red Roof Inn ended in or about February 2024.

24. There were obvious signs that M.M. was being trafficked at the Subject Red Roof Inn such that Defendants knew or, through the exercise of reasonable diligence, should have known that they were benefiting from and participating in a venture engaged in her sexual exploitation. Obvious indicators of M.M.'s trafficking at the Subject Red Roof Inn included:

a. M.M. was trafficked in rooms at the Subject Red Roof Inn rented by the Trafficker (or at the direction of the trafficker) in repeated successive stays over an approximately eight-month period—at times booked in Plaintiff's own name—despite Plaintiff never being a true registered guest paying for her own accommodations;

b. M.M. solicited sex buyers openly at the property, going room to room and along the exterior balconies of the hotel's floors, and on several occasions walked through the lobby accompanied by sex buyers;

c. M.M. wore revealing or skimpy clothing inconsistent with that of an ordinary hotel guest while soliciting sex buyers in the common areas of the property;

d. M.M. had visible bruising on her legs from the Trafficker's repeated beatings;

e. There was steady foot traffic in and out of the rooms involving sex buyers who arrived and departed to rooms where Plaintiff was trafficked in short periods of time at a steady pace throughout the day;

f. Used condoms, condom wrappers, and cocaine baggies were left in the trash and in plain view in the rooms occupied by M.M., which were observed or should have been observed by housekeeping staff when the rooms were turned over between the Trafficker's successive stays;

g. The Trafficker openly dealt crack cocaine out of the rooms at the Subject Red Roof Inn, a further indicator of the illegal activity occurring at the property;

h. M.M. was advertised online by her trafficker for commercial sex acts at the Subject Red Roof Inn, including on Skipthegames, Grindr, and MeetMe, and, upon information and belief, the hotel's free Wi-Fi; and

i. Other commonly known sex trafficking red flags which Defendants knew or should have known of had anti-trafficking measures been timely and properly implemented.

25. Defendants permitted the open and notorious trafficking of M.M. to continue without intervention, despite the obvious and apparent indicators described above.

26. Numerous employees at the Subject Red Roof Inn, including management-level employees, observed and/or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

27. Despite this knowledge, Defendants took no steps to report suspected trafficking, inquire about M.M.'s welfare, refuse to rent rooms to the Trafficker, or otherwise intervene. Defendants had the authority to deny accommodation to or eject any guest engaged in illegal activity or creating a danger to the health, safety, or welfare of others—yet they exercised none of these options. Defendants provided traffickers a venue, with the cover of a legitimate business, where they could conduct their trafficking activities without having to expend significant efforts to avoid detection or interference.

28. As a consequence of being sex trafficked at the Subject Red Roof Inn, M.M. suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, and psychological injuries, including significant levels of psychological trauma, depression, anxiety disorders, and PTSD, which affect daily functioning. M.M. has sought and received mental health treatment and counseling as a result of the trauma she endured.

## II. Sex Trafficking Has Long Been Prevalent at RRI Branded Properties

29. Defendants' knowledge extends beyond general industry awareness. Use of RRI branded properties for sex trafficking is well known to the Defendants. RRI hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints. Several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of RRI branded properties.

30. No later than 2013, the RRI Brand Defendants began carefully monitoring online reviews and other customer feedback for RRI branded properties. Leadership of the RRI Brand Defendants was obsessed with customer feedback, including reviews that frequently described prostitution, pimps, drug activity, and trafficking at RRI properties nationwide. The RRI Brand Defendants received compiled reviews from Reputology, an online-review aggregator.

31. The publicly available information connecting RRI branded properties to prostitution and sex trafficking includes the following:

a. From 2009 to 2018, eleven survivors were sex trafficked at two Atlanta-area Red Roof Inn properties. Red Roof Inn settled the resulting lawsuit mid-trial in the Northern District of Georgia. During the trial, a former front desk worker testified that forty to fifty percent of one location's clientele consisted of sex traffickers and their victims. Red Roof Inn corporate employees admitted awareness of minor sex trafficking at the properties. An employee at one property stated that prostitution was so pervasive there was no need to report it to management because it was already known;

b. A published investigative analysis of online customer reviews found that hotel guests suspected or claimed to have witnessed prostitution at 177 Red Roof Inn locations nationwide, with numerous reviewers asserting that the activity was so blatant that hotel management must have been aware of it; and

c. Upon information and belief, online reviews and other publicly available information concerning the Subject Red Roof Inn in Toledo, Ohio described conditions consistent with the red flags of prostitution, drug activity, and other criminal activity occurring on the subject premises, which gave actual or constructive notice to Defendants.

32. Based, in part, on the foregoing, at the time M.M. was trafficked at the Subject Red Roof Inn, the RRI Brand Defendants knew or should have known, at least the following: that sex trafficking was endemic at their branded properties, including the Subject Red Roof Inn, and that their existing measures to detect and prevent trafficking were inadequate.

## III. Franchisee Defendant Could Have Stopped M.M.'s Trafficking But Instead Facilitated It

33. The Franchisee Defendant is responsible for the acts and omissions of all employees of the Subject Red Roof Inn because these acts and omissions were committed in the scope and course of employment and because the Franchisee Defendant failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the known risks of human trafficking at the Subject Red Roof Inn.

34. The Franchisee Defendant facilitated M.M.'s trafficking through numerous acts and omissions, including:

a. Renting rooms to the Trafficker in repeated successive stays over an approximately eight-month period—at times in Plaintiff's own name—despite the observed signs of trafficking, including the obvious indicators that M.M. was being trafficked in those rooms and commercially sexually exploited;

b. Ignoring the open solicitation occurring throughout the property, including M.M. going room to room and along the exterior balconies and walking through the lobby with sex buyers, as well as the used condoms, condom wrappers, and cocaine baggies left in the rooms' trash at turnover between stays—rather than intervening to stop the open and obvious exploitation of M.M.;

c. Failing to monitor the exterior corridors, balconies, and parking-lot room entrances through which a steady stream of sex buyers accessed the rooms while bypassing the lobby and front desk; and

d. Providing the free Wi-Fi that, upon information and belief, M.M.'s trafficker used to advertise and solicit buyers for commercial sex at the Subject Red Roof Inn, including on Skipthegames, Grindr, and MeetMe.

35. An implicit understanding existed between M.M.'s trafficker and the Franchisee Defendant, evidenced by the fact that the Trafficker operated openly at the property for approximately eight months, repeatedly rented rooms in his own name and in Plaintiff's name and paid in cash on a day-by-day basis, openly dealt crack cocaine from the rooms, took no steps to conceal his activities, and was permitted to continue without question, interference, or concern for detection.

## IV. The RRI Brand Defendants Retained Control Over Relevant Aspects of Operations and Had Both the Opportunity and Duty to Prevent Sex Trafficking

36. The RRI Brand Defendants retained control over the details and methods of aspects of the operation of the Subject Red Roof Inn that are directly relevant to the proliferation of sex trafficking. As a result, the RRI Brand Defendants participated in a venture with sex traffickers and had both the opportunity and the duty to prevent M.M.'s trafficking.

37. Upon information and belief, the RRI Brand Defendants exercised systemic and pervasive control over the Franchisee Defendant's operation of the Subject Red Roof Inn, including the methods and details of work, through ways including:

a. Controlling and requiring use of a centralized reservation and marketing system;

b. Dictating policies regarding forms of payment and identification requirements;

c. Setting prices, imposing required discounts, setting wages, and dictating staffing levels;

d. Providing and mandating standardized training, including training on human trafficking;

e. Requiring collection of guest data through RRI Brand Defendants' systems and making that data available to the RRI Brand Defendants;

f. Monitoring and controlling online bookings, customer reviews, and response platforms;

g. Setting and enforcing brand standards, policies, and procedures, including those specifically related to human trafficking, cybersecurity, and guest safety;

h. Conducting regular inspections and audits; and

i. Requiring compliance with Wi-Fi qualifications, internet landing page policies, filtering, and cybersecurity thresholds.

38. The RRI Brand Defendants had the right to and actually did enforce their control through inspections, compliance monitoring, directing specific corrective steps, mandating training, and the right to terminate the franchise or operating agreement.

39. The RRI Brand Defendants are vicariously liable for the acts and omissions of the Franchisee Defendant. The RRI Brand Defendants and the Franchisee Defendant acted as joint employers because, at the Subject Red Roof Inn, there is a high degree of interrelation of operations and profit sharing.

## CAUSES OF ACTION

### Count I: Beneficiary Liability Under 18 U.S.C. § 1595(a) (All Defendants)

40. Plaintiff incorporates all previous allegations herein.

41. M.M. is an individual who is a victim of a violation of Chapter 77 of Title 18, including sex trafficking in violation of 18 U.S.C. § 1591, and is thus entitled to bring a civil action under 18 U.S.C. § 1595(a). M.M. was caused, through force, fraud, and coercion, to engage in commercial sex acts at the Subject Red Roof Inn.

42. Knowing Benefit. Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture they knew or should have known was engaged in a violation of the TVPRA. The rental of a room constitutes a financial benefit from a relationship with the Trafficker. Defendants also benefited from franchise fees, royalty fees, reservation fees, marketing fees, and other ancillary fees, as well as from acquiring valuable customer data through free Wi-Fi used by traffickers and buyers.

43. Participation in a Venture. Each Defendant participated in a venture with, among others, M.M.'s trafficker. Sex trafficking ventures cannot operate without access to physical spaces; providing traffickers with a hotel room is providing them with an essential place of business. That is participation. Participation in a venture does not require an "overt act" furthering the sex trafficking aspect of the venture. Each Defendant had an ongoing business relationship with M.M.'s trafficker, who was able to continue renting rooms in his own name and in Plaintiff's name, repeatedly and in successive stays for approximately eight months, despite Defendants' knowledge or constructive knowledge of the trafficking. The venturers shared a common purpose—the rental of hotel rooms and the making of profits. The repeated room rentals and renewals to M.M.'s trafficker were not standard arm's length transactions but constituted a continuous course of dealing that facilitated and sustained the sex trafficking venture.

44. Knowledge. Defendants knew or should have known that the venture in which they participated was engaged in acts in violation of the TVPRA. Under the negligence standard of § 1595(a), Plaintiff need not show actual knowledge or conspiracy. Evidence that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff, combined with evidence specific to M.M.'s own trafficking—including the numerous red flags that should have alerted staff to her situation—satisfies the constructive knowledge standard. Defendants cannot insulate themselves from statutory liability by consciously avoiding information that would otherwise constitute constructive knowledge.

45. The ventures in which each Defendant participated were a direct, producing, and proximate cause of the injuries and damages to M.M. Under the TVPRA, Defendants are jointly and severally liable for all damages a jury awards to M.M.

**Count II: RRI Brand Defendants' Vicarious Liability for Franchisee Defendant's Violations of the TVPRA (Actual Agency)**

46. Plaintiff incorporates all previous allegations herein.

47. The Franchisee Defendant acted as the actual agent of the RRI Brand Defendants with respect to operation of the Subject Red Roof Inn because, at all relevant times, the RRI Brand Defendants exercised systemic control over the Franchisee Defendant's day-to-day operations, including the means and methods of operation.

48. Under the TVPRA and federal common law, a principal is vicariously liable for the violations of its actual agent. In addition to their own direct liability under Count I, the RRI Brand Defendants are also vicariously liable to M.M. for the TVPRA violations of the Franchisee Defendant, which is the RRI Brand Defendants' actual agent.

## DAMAGES

49. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1595(a), M.M. has sustained damages. Defendants are jointly and severally liable for all past and future damages.

50. M.M. seeks to recover damages, including but not limited to the following past and future losses:

a. Compensatory damages in an amount to be determined at trial;

b. All available economic damages, including past and future lost earnings and earning capacity, and past and future medical, hospital, counseling, therapy, psychiatric, and other healthcare expenses;

c. All available noneconomic damages, including conscious pain, conscious suffering (physical and mental), and loss of enjoyment of life;

d. Past and future life care expenses and other necessary support services;

e. Consequential economic losses and other out-of-pocket expenses;

f. Disgorgement of profits obtained through unjust enrichment;

g. Restitution;

h. Punitive (exemplary) damages, as permitted by law;

i. Reasonable attorneys' fees as authorized by 18 U.S.C. § 1595(a);

j. Costs of this action;

k. Pre-judgment and post-judgment interest; and

l. Such other and further relief as this Court deems just and equitable.

**JURY DEMAND**

51. M.M. demands a trial by jury on all issues so triable.

**RELIEF SOUGHT**

WHEREFORE, M.M. prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for M.M. against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which M.M. may, in law or in equity, show herself to be justly entitled.

Dated: June 18, 2026

Respectfully submitted,

s/ Matthew J.P. Coffman
Matthew J.P. Coffman
COFFMAN LEGAL, LLC
1550 Old Henderson Rd #126
Columbus, OH 43220
Phone: (614) 949-1181
Fax: (614) 386-9964
mcoffman@mcoffmanlegal.com
Local Counsel for Plaintiff

Tristan Akers, Esq.
COFFMAN LEGAL, LLC
1550 Old Henderson Rd #126
Columbus, OH 43220
Phone: (614) 949-1181
Fax: (614) 386-9964
Local Counsel for Plaintiff
and
Randolph Janis, Esq.
DOUGLAS AND LONDON, P.C.
(PHV motion forthcoming)
1 State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

Chloe Makowsky, Esq.
DOUGLAS AND LONDON, P.C.
(PHV motion forthcoming)
1 State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com
Attorneys for Plaintiff